Delivered January 21, 1891.

---

### H. H. RUSSELL ET AL. v. THOMAS BANCROFT & SONS.

#### No. 3011.

**Cause of Action — Remote Damages.** — Russell et al. sued Bancroft & Sons for damages, claiming that by reason of a slab burner erected by defendants within two hundred yards of their saw mill, the plaintiffs could not insure their mill. The mill was burned; no connection between the slab burner and the fire was shown. Suit for the amount of insurance which could have been effected but for the slab burner. The plaintiffs before the fire had obtained an injunction against the defendants, restraining the operation of the nuisance. *Held*, the demurrer to the petition was properly sustained, no cause of action appearing in the petition.

APPEAL from Orange.   Tried below before Hon. W. H. Ford.
A statement is given in the opinion.

*Perryman & Gillaspie* and *Hart & Sholers,* for appellants.—1.   The allegations in plaintiffs' first amended original petition show that the loss of their mill was occasioned by the willful and wrongful acts of appellees, and that said acts of appellees were the direct, proximate, and immediate cause of the loss.

2.   The damage caused to appellants by loss of their mill without insurance was such as could well have been anticipated and foreseen by appellees at time of the erection of the nuisance.   1 Suth. on Dam., pp. 21–25; Railway v. Lework, 4 Ind., 471; Hoadley v. Trans. Co., 115 Mass., 304; Childress v. Yourie, Meigs, 561; McAfee v. Crofford, 13 How., 447.

*Bullitt & Bullitt* and *Hal. W. Greer,* for appellees.—1.   All damages that are the natural and necessary consequence of a nuisance may be recovered under a general allegation of damages; but damages that although the natural are not a necessary consequence must be specially alleged or no recovery can be had therefor.   Comminge v. Stevenson, 76 Texas, 645; Wood on Nuis., sec. 871; 3 Suth. on Dam., p. 426.

2.   The damages are too remote, the loss of insurance being neither the natural nor probable effect of defendants' act in building the slab

burnér, that being a matter of special contract, optional with appellants and insurance companies. Willis & Bros. v. Morris, 66 Texas, 628; 1 Suth. on Dam., 48.

3. Before appellants can recover they must allege that appellees' acts directly and proximately caused the loss of appellants' mill by fire. Willis & Bros. v. Morris, 66 Texas, 633; 1 Suth. on Dam., 57.

4. The general rule is that liability does not arise from the mere exercise of a legal right, though hurt may result from it, if this could not have been avoided except by abandoning the right. Construction Co. v. Meddlegge, 75 Texas, 637.

HENRY, Associate Justice.—This suit was brought by appellants to recover damages. The court sustained a general demurrer to plaintiffs' petition and dismissed the cause.

We take the following statement of the cause of action from appellants' brief:

"Appellants allege in their final amended original petition that for fifteen years prior to June 5, 1890, they had owned and operated a shingle mill in Orange, Texas, and also owned the land upon which same was standing. That R. B. Russell, husband of one of the plaintiffs and father of the other plaintiffs, had for thirty years prior to his death, which occurred about fifteen years ago, been the owner of said land and had for that length of time owned and operated said shingle mill; that said mill at time of destruction was worth $20,000. That appellees many years after the building of appellants' mill built a steam saw mill about three hundred yards from and adjoining appellants' mill, and erected out in the Sabine River, and about two hundred yards from plaintiffs' mill, a slab burner, in which the cast-off material from appellees' mill was burned. Said burner was fed by a slab elevator, which carried off said refuse material and discharged same in slab burner. That appellees commenced the operation of their mill and slab burner about one and a half years ago; that by reason of the manner in which said burner was built and the manner in which same was operated it became a nuisance to and greatly endangered appellants' mill; that their mill was in constant danger of fire while the burner was being operated; that their said mill had often caught fire from sparks emitted from said burner. That prior to 1886, when appellants were operating said mill, they kept the same insured for $10,000. Subsequent to 1886, and until a short while before appellees commenced the operation of their mill, appellants did not operate their mill for the want of material to operate it, and for that reason for the last named period they did not insure.

"About the first of the year 1889 appellants and appellees both commenced the operation of their mills, and appellants then applied to all the local insurance agents in the town of Orange, where their mill was situated,

who represented a great many good and solvent insurance companies, for insurance on their said mill, offering and tendering the premium money for said insurance.   That said agents, among whom were some who had prior to the erection of said burner accepted the risk on said property of appellants and insured same, inspected appellants' property and refused to accept the risk on account of the close proximity of said burner to appellants' property and the manner of construction of said burner.   Appellants continuously requested said agents to insure said property, being at all times ready and willing to pay for said insurance, but were always refused insurance, alone on account of said burner.

"Appellants often during that time complained to appellees about the danger to them from said burner and their inability to procure insurance on account of said burner, and importuned them to remedy said burner so they could procure insurance, notifying them that in case of loss by fire they, appellees, would be held by appellants responsible therefor.   Appellants' complaints to appellees being unheeded, appellants were at last forced to and did sue out a writ of injunction restraining defendants from operating said burner; that on the —— day of ———, 1889, said injunction was perpetuated, restraining appellees from further using said burner until it was so constructed as not to endanger appellants' property; that appellants continuously after said injunction had been perpetuated and up to the time said mill was destroyed sought insurance upon their mill from said insurance agents, offering to pay the premium thereon, but were always refused by reason alone of said burner.   That appellees never in any way complied with the order of the court granting said injunction, and appellants ever since the granting of said injunction used all the means in their power, legal or otherwise, to prevent the injury done to them by the erection of said nuisance, but without avail, and appellees continued said nuisance and thus preverted appellants procuring insurance until said mill was destroyed by fire; that appellants by reason of said wrongful acts on the part of appellees were prevented from procuring insurance on said mill, and were thereby damaged in the sum of $10,000.   That appellants have at all times since the refusal of said insurance to them used the utmost diligence to prevent the destruction of said property by fire, and did so watch and guard said mill and so control everything in connection therewith that the insurance, had the same been granted, could have been collected."

Appellants pray for $10,000 damages and costs.

It does not seem to be claimed that the defendants' burner had any connection with the origin of the fire that destroyed plaintiffs' property.

We are unable to see any proper connection that the allegations with regard to the writ of injunction have with the alleged cause of action. If it was otherwise, no cause is shown for not making the writ of injunc-

tion accomplish the purposes for which it was sought; and if it had been done, we can see no reason why it would not have relieved plaintiffs as it was designed to do.

We know of no authority for extending to the plaintiffs the relief sought, and the judgment must be affirmed.

*Affirmed.*

Delivered January 30, 1891.